AMERICAN CHICLE CO. v. W. J. WHITE CHICLE CO. et al.

(District Court. W. D. New York. June 7, 1912.)

No. 169.

1. TRADE-MARKS AND TRADE-NAMES (§ 95*)—UNFAIR COMPETITION—USE OF NAME—CONSTRUCTION OF CONTRACT.

Where a contract, conveying the business, good will, and rights of a manufacturer of chewing gum, and binding the sellers not to engage in the business for 10 years, made no mention of the name of the sellers which had previously been used on the packages of gum sold, in connection with names adopted for the different brands, the question whether they were precluded from using such name in a similar business after the expiration of the 10 years is not sufficiently clear to entitle the purchaser to a preliminary injunction to restrain such use.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names. Cent. Dig. § 108; Dec. Dig. § 95.*]

---

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION OF DRESS.

Defendants *held*, on the showing made, to have intentionally imitated packages, dress, and advertisements of chewing gum made and sold by complainant to such extent as to constitute unfair competition and entitle complainant to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by the American Chicle Company against the W. J. White Chicle Company and William J. White. On motion for preliminary injunction. Granted in part.

Louis Hicks, of New York City, for complainant.

Guggenheimer, Untermeyer & Marshal, of New York City (Abraham Benedict, of New York City, of counsel), for defendants.

HAZEL, District Judge. [1] The bill alleges unfair competition in trade, and the conveyance by W. J. White & Son, a partnership, of the business and good will in the business of the manufacture and sale of White's chewing gum to the complainant corporation. A motion is made to restrain the defendants pendente lite from using the name "White" or "White's" upon packages, wrappers, boxes, or advertisements of chewing gum manufactured by the defendant company, from using the name "White" as part of defendants' corporate name, and from simulating complainant's wrappers, labels, signs, and advertisements. The facts, in so far as material, are as follows:

W. J. White & Son, who for many years prior to June, 1899, were engaged in the business of manufacturing and selling chewing gum of different kinds and flavors, sold their trade-mark and good will in the business to the complainant, at the same time agreeing in writing not to engage in the chewing gum business for a period of 10 years. The defendant William J. White became the president of the complainant corporation and was such continuously down to 1907. Subsequently, in 1911, about two years after the expiration of the period in which he had agreed not to engage in a similar business, he organized the W. J. White Chicle Company, is now its president and general manager, and conducts the business of manufacturing and selling chewing gum at Niagara Falls, N. Y. It is claimed by complainant that competition arose by reason of the organization of the W. J. White Chicle Company and its use of the name "White" or "White's" in connection with the sale of its product, which the latter advertises and labels in such a way as to destroy the good will of the business which the complainant corporation acquired from W. J. White & Son by means of the conveyance heretofore mentioned. Complainant further claims that its chewing gum has become popularly known by the name of "White's Chewing Gum," or "White's Yucatan Chewing Gum," and that therefore de-

fendant corporation, which subsequently adopted the name of "White" in connection with its product, did so to palm off its gum for that of complainant's; and that, in addition to such wrongful acts, the defendant corporation imitates complainant's labels, signs, cards, and general advertising.

I have carefully considered the various questions presented and argued at the bar, and am of opinion that the question as to whether the personal name "White" or "W. J. White" was included as a part of the good will of the transferred business is not entirely free from doubt. The agreement in terms includes "all trade-marks, rights, grants, labels, cuts, signs, inventions and patents * * * and all the visible tangible personal property, including the good will of the said business." But there is no mention of the surname "White" or "White's" in either the agreement of conveyance or in the agreement by W. J. White & Son not to engage in competing business for a period of 10 years.

At the time of the conveyance, complainant's predecessors manufactured three brands of chewing gum, "Yucatan," "Red Robin," and "Piggy Pepsin," and though the name "White" or "White's" was printed upon the wrappers and packages infolding the chewing gum, and upon labels and advertisements, it was only printed in connection with the words "Yucatan," "Red Robin," etc., in much smaller type, and was less prominently displayed than were those words. In consequence of such method of printing and advertising, the gum seems to have become known to the public by the name of the particular brand, and not by the designation of "White's Chewing Gum." I am confirmed in this opinion by the testimony of the affiant Strong and other dealers who show that the surname "White" in connection with "Yucatan" gum is used by purchasers in comparatively few instances; buyers usually asking for "Yucatan," by which designation alone it attained popularity and is generally known in the trade. Complainant's affidavits show that, upon requesting a package of "White's Chewing Gum" from a dealer, the buyer receives either "White's Yucatan," "White's Whitemint," or White's gum of other flavors. But this confusion arises, I think, from the dealers' acquaintance with the printed matter upon the packages, boxes, and wrappers, and not from that of the ordinary buyer. Moreover, it is conceded that, if it had been the intention to convey the exclusive right to the use of the name "White" or "White's" in connection with the sale of the chewing gum business, such an intention would have been clearly expressed. This argument is, I think, entitled to careful consideration. The question of what was meant by the term "rights" as specified in the agreement, and whether it was intended that the transferrors should never in the future use such name in connection with the chewing gum business should be held in abeyance until there can be an examination and cross-examination of the witnesses with reference to such asserted exclusive right. The different products of the defendant company are put upon the market by the names "White's Whitemint," "White's Meadowmint," etc., and hence the

importance of ascertaining the rights under the agreement will readily be appreciated.

As already stated, it is not sufficiently shown by the complainant that the "Yucatan" brand of chewing gum was known to the public by the name of "White's Chewing Gum," as distinguished from the designation "Yucatan," and I am therefore disinclined to enjoin the defendant corporation from using the personal name of "White" or "White's" in connection with its brands of chewing gums.

[2] There must, however, be a modification of the advertisements and cards of the defendant and also of the wrappers in which its "Whitemint" gum is infolded. The objectionable wrapper and band are of pink of only a slightly different shade from that used by the complainant on its "Yucatan" chewing gum, and as there is a strong resemblance between the two even though the complainant uses a yellow band around the pink package, the use by the defendant company of the pink wrapper and band must be enjoined. The square labels and advertising cards by which the defendant advertises its products are also thought imitations of complainant's cards. Both companies use square cards having in the center a circular disk of a bright contrasting color, and these cards are suspended by a cord at one corner which gives them, when hanging, a diamond shaped appearance. Upon the disks of complainant's cards are printed the words "Chew White's Yucatan Gum," while upon the defendants' disks are the words "Use White's Meadowmint to Chew," the words "Yucatan" and "Meadowmint" being in larger type than are the other words, while around about the disk on the margins of the cards of both are printed various catch phrases. The cards are of many colors, those of complainant being of red, white, and blue, while those of defendant company are of red, yellow, and green, and are manifestly a simulation of complainant's.

Because of the reasons heretofore outlined, I must on this record deny a preliminary injunction restraining the defendant company from using the word "White" or "White's" in connection with the manufacture and sale of its different brands of chewing gum. But I think it should not be permitted to use the pink wrapper and pink band or label binding together the pieces of gum, and should not be permitted to use the square advertising cards which apparently simulate complainant's, for such are calculated to induce buyers of chewing gum to believe that the product of the defendant company is the product of the complainant.

In the affidavit of White, the president of the W. J. White Chicle Company, there is stated a willingness to couple, with the name of "White" or "White's" on the labels, wrappers, and advertising matter, a statement indicating that the company has no connection with the business of the complainant, the former business of W. J. White & Son, and if complainant desires to incorporate this provision or its equivalent in the restraining order it may do so. The form of the order as to details regarding similarities between packages, advertising cards, and labels upon the boxes and around the packages will be settled on notice.