CHAS. S. HIGGINS COMPANY, Appellant, *v.* HIGGINS SOAP COMPANY, Respondent.

While, *it seems*, the law protects the right of a man to use his own name in his own business, even if such use is injurious to another who has established a prior business of the same kind, using the same name, and has gained a reputation which goes with the name, the courts require that the name shall be honestly used, and will permit no artifice or deceit designed or calculated to mislead the public and palm off the business as that of the person who first established it.

An exclusive right may be acquired in the name in which a business may be carried on, whether that of a partnership or an individual, and it will be protected against infringement by another, who assumes it for the purposes of deception, or, *it seems*, even innocently, without right, to the detriment of the one who first used it, and this right, which is in the nature of a right to a trade mark, may be sold or assigned.

So, also, an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion, and to enable the later corporation to obtain the business of the prior one.

In 1846, Charles S. Higgins commenced the business of manufacturing soap, which business was continued by him and by his son, Charles S. Higgins, who succeeded to the business upon his father's death, down to 1890, when plaintiff, a corporation organized by the son and others, purchased the business, with the good will, labels, trade marks, etc. The business was very valuable, and plaintiff and its predecessor expended, subsequent to 1879, $300,000 in advertising. The manufactured article was well known to the trade as "Higgins Soap," and among the labels transferred was one bearing those words, and the word "Higgins" was upon many of the labels. Plaintiff was sometimes known as the "Higgins Soap Company," and letters for plaintiff, containing orders for its goods and relating to its business matters, were sent directed, "Higgins Soap Company," "Charles S. Higgins Soap Co." and "Chas. Higgins Co." Higgins was a director of the plaintiff and its president for a year, when he was displaced from that position and ceased to be a director. In his bill of sale to plaintiff, he reserved the right to engage in the business of making soap, if plaintiff should terminate his employment, and in 1892 he and others organized the corporation defendant in New Jersey to carry on the soap business, of which Higgins was president. Defendant commenced the manufacture, having its factory, principal office and place of business in this state; it put up soap in bars; on the bars and wrappers were impressed the words, "Higgins Soap Company, * * * Charles S. Higgins, Presdt." In an action to restrain the use in this state by defendant of its corporate name "Higgins Soap Company," it also appeared that, in consequence of the use of the name, confusion had arisen. *Held*, that plaintiff was entitled to the relief sought; that defendant was a distinct person in law from Charles S. Higgins, and it stood, in respect to the question involved, as if he had never been a director or stockholder; that, therefore, it derived no additional immunity from the fact that the name "Higgins" in its corporate name was that of one or more of its corporators, or that any one of that name might engage in the soap business under the family name, or had consented to the use of the name by defendant.

*Higgins Co.* v. *Higgins Soap Co.* (71 Hun, 101), reversed.

(Argued December 4, 1894; decided January 22, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. Aplington* for appellant. The relief asked for in this action is based upon the principles involved in trade mark cases. (*Reeves* v. *Denix*, 12 Abb. Pr. [N. S.] 92; *McArdle* v. *Peck*, 28 How. Pr. 120.) The plaintiff is entitled to an injunction herein. (*Newby* v. *O. C. R. R. Co.*, 1 Deady, 609; *A. G. P. Assn.* v. *G. P. Co.*, 25 Hun, 398; *C. Co.* v. *C. Co.*, 32 Fed. Rep. 94; *R. Co.* v. *R. & S. Co.*, 11 id. 495; *Landreth* v. *Landreth*, 22 id. 41; *Rogers* v. *Rogers*, 1 N. E. Rep. 411; *T. C. F. Co.* v. *Messam*, L. R. [6 Ch. D.] 574; 14 id. 748; *Fullwood* v. *Fullwood*, 9 id. 176; *Holloway* v. *Holloway*, 13 Beav. 209; *Stonebreaker* v. *Stonebreaker*, 33 Md. 268; Browne on Trade Marks [2d ed.], § 420; *Munroe* v. *Tousey*, 129 N. Y. 38; *Waterman* v. *Shipman*, 130 id. 301; *M. D. Assn.* v. *D. M. Agency*, 25 Ill. App. 259; *McLean* v. *Fleming*, 96 U. S. 245.)

*Jesse Johnson* for respondent. Every man has the right to use his own proper name to designate the product of his own ingenuity, skill or industry. It is appropriate and proper that he should do so. (*Meneely* v. *Meneely*, 62 N. Y. 427; *Devlin* v. *Devlin*, 69 id. 212; *Koehler* v. *Sanders*, 122 id. 65; *Caswell* v. *Hazzard*, 121 id. 484; *James* v. *James*, 41 L. J. [Ch.] 353; *M. W. & Co.* v. *Ward*, 40 N. Y. S. R. 792.) General descriptive words, words which are the names of places or things, cannot be appropriated and made property under the trade mark law. (*Newman* v. *Alvord*, 51 N. Y. 189; *Lackawanna Coal Case*, 13 Wall. 311; *G. Co.* v. *G. R. Co.*, 128 U. S. 598; *B. C. Co.* v. *Myer*, 139 id. 540.) Mr. Higgins simply uses his own name, and, if some one remembers who and what he was in the soap business, that does not present a case for an injunction. (*Van Wyck* v. *Horowitz*, 39 Hun, 237; *Colton* v. *Dean*, 7 N. Y. S. R. 78; *Ward* v. *Ward*, 40 id. 792.) The fact that the names here in controversy are the names of corporations and not of persons, makes the rule still stronger in defendant's favor. (*E. L. A. Co.* v.

*E. L. I. Co.*, 10 N. Y. Supp. 845; 61 Hun, 552; *F. L. & T. Co.* v. *F. L. & T. Co.*, 21 Abb. [N. C.] 104.)

ANDREWS, Ch. J. The plaintiff seeks in this action to restrain the use by the defendant in this state of its corporate name, "Higgins Soap Company," in the business of manufacturing and selling soap, on the ground that such use is an unlawful invasion of the rights of the "Chas. S. Higgins Company," the plaintiff corporation. The corporate names of the respective corporations are not identical, but it is claimed in behalf of the plaintiff that there is a similarity between them which, in connection with other facts, is liable to and has produced confusion and will enable the defendant to appropriate the trade of the plaintiff. The facts found show that in 1890, prior to the organization of the corporation defendant, under the laws of New Jersey, which took place in 1892, the plaintiff, a domestic corporation, organized by Charles S. Higgins and others, purchased from Charles S. Higgins and his partner, for the sum of $810,000 in stock and bonds, the soap business originally established in Brooklyn by the father of Charles S. Higgins in 1846, to which business Charles S. Higgins succeeded on his father's death in 1860, together with the good will, labels, trade marks and other property employed in the business. The business was very valuable, and the plaintiff and its predecessor expended, subsequent to 1879, in advertising, the sum of three hundred thousand dollars, and the product was extensively sold in New York and other states and was well known to the trade as "Higgins Soap," and the plaintiff corporation was sometimes known as the "Higgins Soap Company." The plaintiff and its predecessors manufactured a great variety of soaps, which were put up under different names, the leading article being known as "Chas. S. Higgins German Laundry Soap," but as we infer from the findings, all the soap so manufactured passed under the general name of "Higgins Soap." On the organization of the plaintiff corporation and the purchase of the business, it continued to carry it on in

Brooklyn, where it had been originally established, and where it has ever since been carried on. Charles S. Higgins was a director of the plaintiff and its first president, and so continued for a year after its incorporation, when he was displaced from his position as president and ceased to be a director of the company. The ground of his discharge does not appear. Soon afterwards, in the summer of 1892, Charles S. Higgins, with his wife, his son and two other persons, organized the defendant corporation under the name of the "Higgins Soap Company," to carry on the soap business, and commenced the manufacture of soap, having its factory, principal office and place of business outside of New Jersey, in the city of Brooklyn. Charles S. Higgins became the president of the defendant corporation, and among other products it manufactured and put up a soap in bars, on the wrappers of which appear the words "Higgins Soap Company, Original Laundry Soap, Charles S. Higgins, Prest.," and the bars were impressed with substantially the same words.

It was shown on the trial that letters intended for the plaintiff, containing orders for goods, or relating to other business matters, had been sent addressed to the "Higgins Soap Company," "Chas. S. Higgins Soap Co.," and "Chas. Higgins Co.," but in general the plaintiff's place of business was added to the address and they were received by the plaintiff. There were produced 28 letters and envelopes of this kind, written within four months after the organization of the defendant and the commencement of this action, and it was stated that these did not comprise all the letters of this description.

The main ground upon which the plaintiff has been defeated in the courts below is that Charles S. Higgins or the members of his family, either separately or jointly, had the right to establish the soap business and to use the name of Higgins in conducting it, and to designate the product as "Higgins Soap," and that no right of the plaintiff was invaded by giving to the corporation formed by them the name of "Higgins Soap Company."

The case of *Meneely* v. *Meneely* (62 N. Y. 427), following

other cases, is an authority upon the proposition that any person may use in his business his family name, provided he uses it honestly and without artifice or deception, although the business he carries on is the same as the business of another person of the same name previously established, which has become known under that name to the public, and although it may appear that the repetition of that name in connection with the new business of the same kind, may produce confusion and subject the other party to pecuniary injury. The right of a person to use his family name in his business is regarded as a natural right of which he cannot be deprived, by reason simply of priority of use by another of the same name. In the bill of sale from Charles S. Higgins to the plaintiff the former consented that so long as he should be allowed a salary of fifteen thousand dollars per year for his services, he would give to the company the full benefit of his receipts, processes, etc., and that "so long as he may be employed at the salary aforesaid, he, said Higgins, would refrain from making or selling soap in the city of Brooklyn except for said company," thereby, by implication, reserving the right to engage in the business if the plaintiff should terminate his employment. But the question as to the right of the defendant to assume the name of the "Higgins Soap Company," or to do business in that name, is not affected by any contract entered into between Charles S. Higgins and the plaintiff. The defendant is a distinct person in the law from Charles S. Higgins, one of its corporators and officers. It had entered into no contract with the plaintiff, nor does it derive any of its rights from Charles S. Higgins. It stands in respect to the question involved in this litigation in the same situation as if Charles S. Higgins had never been a corporator or stockholder. It cannot appropriate the name, or the trade marks, or the business of the plaintiff by any simulation or deceit, because the law prohibits such appropriation by any person, natural or artificial; but the fact that Charles S. Higgins was active in organizing the defendant, or that he may have been actuated in doing so by feelings hostile to the plaintiff or by a

desire to injure its business, is, as we conceive, irrelevant to the case. The sole test of liability is whether the acts done, either in organizing the defendant or in the prosecution of its business subsequently, invaded any right of the prior corporation or exceeded the boundaries of fair competition. On the other hand we think it is equally clear that the defendant derives no additional immunity from the fact that the name of "Higgins," in its corporate name, was that of one or more of its corporators, or that Charles S. Higgins, or any one of that name, might engage in the soap business under the family name, or that Charles S. Higgins and the other corporators of the same name had consented to its use. The right of a man to use his own name in his own business the law protects, even when such use is injurious to another who has established a prior business of the same kind and gained a reputation which goes with the name. But in such cases the courts require that the name shall be honestly used, and they permit no artifice or deceit, designed or calculated to mislead the public and palm off the business as that of the person who first established it and gave it its reputation. (*Croft* v. *Day*, 7 Beav. 84; *Holloway* v. *Holloway*, 13 id. 209; *Cement Co.* v. *Le Page*, 147 Mass. 206.) It is well settled that an exclusive right may be acquired in the name in which a business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another who assumes it for the purposes of deception, or even when innocently used without right to the detriment of another, and this right, which is in the nature of a right to a trade mark, may be sold or assigned. (*Levy* v. *Walker*, 10 Ch. Div. 436; *Hoxie* v. *Chaney*, 143 Mass. 592; *Bassett* v. *Percival*, 5 Allen, 345; *Cement Co.* v. *Le Page, supra; Millington* v. *Fox*, 3 Myl. &. Cr. 338.) In respect to corporate names the same rule applies as to the names of firms or individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion and to enable the later corporation to obtain, by reason of the similarity of names, the

business of the prior one. The courts interfere in these cases, not on the ground that the state may not affix such corporate names as it may elect to the entities it creates, but to prevent fraud, actual or constructive. The names of corporations organized under general laws, and in most other cases, are chosen by the promoters, and it would be an easy way to escape from the obligations which are enforced as between individuals, if a corporation were granted immunity by reason of their corporate character. The principle upon which courts proceed in restraining the simulation of names in the nature of trade marks and have come to designate the business of a particular person or company, is stated in *Lee* v. *Haley* (L. R. [5 Ch. App.] 155), an action to restrain the use by the defendant of the name of The Guinea Coal Co., in his business. "I quite agree (said GIFFORD, L. J.), that they (plaintiffs) have no property in the name (Guinea Coal Co.), but the principle upon which the cases on the subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name." The cases are not infrequent in which the use of corporate names has been restrained on the principle of the trade mark cases. (*Holmes, Booth & Haydens Mfg. Co.* v. *Holmes, Booth & Atwood Mfg. Co.*, 37 Conn. 278; *Massam* v. *Thorley Cattle Food Co.*, L. R. [14 Ch. Div.] 748; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94; *Newby* v. *Oregon Central Rway. Co.*, 1 Deady, 609; *Rogers Mfg. Co.* v. *Rogers & Spurr Mfg. Co.*, 11 Fed. Rep. 495; *The Le Page Co.* v. *Russia Cement Co.*, 51 id. 942.)

Whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; how far the name is a true description of the kind

and quality of the articles manufactured or the business carried on ; the extent of the confusion which may be created or apprehended, and other circumstance which might justly influence the judgment of the judge in granting or withholding the remedy. Whether upon equitable principles the remedy should have been awarded in this case upon the facts proved and found is the question in this case. If the right of the plaintiff to relief depended exclusively upon the comparison of the corporate names of the parties, and the inferences to be drawn from such comparison alone and without reference to any extrinsic facts, it might well be doubted whether the names are so similar that the court could find that confusion and injury would be likely to arise. But the case does not rest alone upon the inferences from such comparison. It would naturally be inferred from the names that both parties were corporations. The name of " Higgins " appears in each. The name of the plaintiff does not itself indicate the business of the plaintiff corporation, while the name of the defendant describes its business. But while the plaintiff's name does not describe its business, its product has come to be known to the trade as " Higgins Soap," and to the public the name of the product identified the plaintiff as the manufacturer of this product, and the company came to be known and called, to some extent, the " Higgins Soap Company." The use of the name " Higgins " in connection with the business was valuable because of its use for a great number of years by the father of Charles S. Higgins and subsequently by the son, under which a large business had been built up, and by reason of the large sums which had been expended in advertising the product. The name of the plaintiff in connection with these facts indicated to dealers in soap that the article known as " Higgins Soap " was manufactured by the plaintiff. The manufacture had been established for fifty years, and carried on in the same place. Among the labels which were transferred to the plaintiff was one containing the words " Higgins Soap," and the word " Higgins " was placed upon many of the labels. It cannot be

doubted upon the findings that the reputation of "Higgins Soap," when the defendant corporation was organized, applied to, and designated to the trade, the soap manufactured by the plaintiff and its predecessors. The promoters of the defendant, knowing the history of the business established by Higgins, Sr., in 1846, its transfer to the plaintiff, that the product was known to the trade as "Higgins Soap," that the business had become very valuable and that large sums had been expended in advertising it, proceeded to organize the defendant corporation under the name of the "Higgins Soap Company," and to manufacture soap in the same city where the plaintiff's business was carried on. The inference seems irresistible that the defendant assumed its corporate name so that it should carry the impression that it was the manufacturer of "Higgins Soap," so well known to the public. But if the name was assumed in good faith, and without design to mislead the public and acquire the plaintiff's trade, the defendant, knowing the facts, must be held to the same responsibility as if it acted under the honest impression that no right of the plaintiff was invaded. The names are not identical, but, as said by BRADLEY, J., in *Celluloid Co.* v. *Cellonite Co. (supra)*, "Similarity, not identity, is the usual recourse where one party seeks to benefit himself by the good name of another." In that case the learned and experienced judge who sat therein expressed the opinion that the use of the corporate name of the defendant should be restrained, although there was a much greater dissimilarity between the names there in question than exists between the names of the parties here. As between these parties the case is, we think, the same as if the word "soap" was written into the plaintiff's name and its corporate designation was "Chas. S. Higgins Soap Company." The evidence shows that confusion has arisen, and it is a reasonable presumption that if the defendant is permitted to continue to carry on the business of soap making under its present name the public will be misled and the plaintiff's trade diverted, the extent of such diversion increasing with the increase of the defendant's business.

We think the plaintiff, upon the facts found and proved, was entitled to relief by injunction.

The judgment should be reversed and a new trial granted.

All concur, except HAIGHT, J., not sitting.

Judgment reversed.