TRIAL—REARGUMENT AFTER DECISION.
Where an assignor moved to set aside an ex parte order directing the sale of a trade-mark composed of his name, which would forever prevent him using his own name in retrieving his fortunes, and would permit a stranger to use it though not associated with his own business, and especially where before the assignment the assignor had sold a half million labels bearing the trade-mark to be used on the goods to be purchased of the assignee, a decision of the justice sustaining the motion was not so palpably erroneous as would permit a reargument on the ground that he had overlooked decisions inconsistent with his conclusion; the remedy being by appeal.

Motion in the matter of the assignment of Robert Adams, to reargue an order to show cause why a previous ex parte order directing the sale of an alleged trade-mark should not be set aside. Denied.

William B. Tullis, for moving creditor.

Ritch, Woodford, Bovee & Wallace, for Robert F. Adams and Robert Adams.

RUSSELL, J. A motion is made to reargue the order to show cause why the previous ex parte order directing the sale of an alleged trade-mark should not be set aside. The present motion is not based upon any allegations of fact omitted on the previous hearing through inadvertence or any occurring subsequently to the hearing of the motion, but upon the ground that the justice who decided the motion "overlooked decisions which were inconsistent with his conclusion, and held directly the opposite." If the supposition of the counsel now moving for a reargument was correctly founded, an appeal should have been promptly taken, instead of a motion for a reargument, unless the oversight of the justice was so palpable that his error would be corrected at once upon presentation of the merits involved in the motion. Therefore, it may become material to consider briefly the question as to whether there was enough presented on the prior motion in favor of the decision rendered to give the judicial mind a sufficient basis to fairly decide the question, notwithstanding the affidavit of the counsel now moving as to the oversight so strenuously complained of.

The party moving to set aside the ex parte order, Robert Adams, made a general assignment for the benefit of creditors. Upon an

ex parte application the assignee was directed to sell the supposed common-law trade-mark bearing the name of "R. & H. Adams." It was claimed that this trade-mark existed, and was the property of the assignor, at the time of the assignment, and so, incidentally, passed to the assignee. Prior to the granting of this ex parte order, the same assignee had sold to Robert F. Adams half a million of labels bearing the name of "R. & H. Adams," to be used upon the goods purchased of the assignee by Robert F. Adams, or upon any others upon which the labels could be properly used without deception. If the assignee is now to be permitted to sell the name "R. & H. Adams" as a common-law trade-mark, the result will inevitably follow that the purchaser, whoever he may be, can place upon the market goods not manufactured by R. & H. Adams, but by such purchaser, and stamp thereon the name "R. & H. Adams," as though such goods were manufactured by Robert Adams, the assignor, while for some weeks or months Robert F. Adams will have been vending goods manufactured by Robert Adams or Robert F. Adams with labels purchased from the same assignee, and bearing the name "R. & H. Adams." It would seem, therefore, that the separation of the name as a trade-mark by a subsequent sale, to be used notwithstanding the rightful use of a vast number of labels bearing the same name by the authorization of the assignee, would tend to produce confusion and deceit on the public purchasing the commodities, and that such a result should not be permitted under the cover of a supposed transfer by force of the general assignment and a subsequent ex parte order of this court.

The supposed trade-mark is substantially the name of the assignor, "Robert Adams," who did business under the name of "R. & H. Adams." If his name is of value as a trade-mark, it was made so by the skill and energy with which he associated that name in his conduct of the business prior to the assignment. If it shall now forever be transferred to a stranger to be used, by an involuntary transfer so far as Robert Adams is concerned, and alone by force of an assignment of the name by the general assignee, whose duty ends with the conversion of the property of the assignor into money for the payment of debts, then we have the case of a stranger using a name not associated with his own business solely by force of the assignment, while the assignor himself is debarred forever from using his own name in his future efforts to retrieve his fortunes by intelligence and energy in any way that would lead the public to believe that the same person was manufacturing and vending goods who formerly manufactured the same line under the name "R. & H. Adams." No authority has yet been cited by counsel to justify such a result.

We may fairly suppose that the justice who set aside the ex parte order for a sale of this name had some familiarity with the decision of the court of appeals in the leading case of Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490. That case, properly construed, is an authority to sustain the ruling of the justice, instead of being, as the counsel claims, directly opposite to the conclusions reached. The court of appeals there held that the personal name "Higgins" could not be used by the corporation defendant; that the

use of a man's family name is one of which he cannot be deprived; and that its use by the Higgins Soap Company would tend to produce confusion and deceit. What would be the result here if a person by the name of Smith or Ritchie should be permitted forever after to use the name of "R. & H. Adams" for the manufacture and sale of goods, and Robert Adams should be forever debarred from such use? See, also, on the subjects discussed, Cox, Man. Trade-Marks, 123, citing cases upon kindred subjects. It is therefore apparent that the justice who set aside the ex parte order had considerations of some weight, at least, to justify his conclusion; and therefore, if the defeated party thought him in error, an appeal should have been taken, instead of a motion for a reargument.

The other objections are not of force. No one could have a more potent interest or a better standing to move to set aside an order for the sale of his own name than the assignor himself, and the purchaser of the labels joining with him certainly ought to have a standing to bring to the consideration of the court the proposed improper use of the name in a way calculated to mislead the trading public. And, as the sale was under an ex parte order of this court, it would not seem necessary to bring an action to test these questions when the court always has power to set aside its own orders, and especially one which was not obtained by notice to any party interested. The motion for reargument is denied, with $10 costs.