(28 Misc. Rep. 399.)

### ARNHEIM v. ARNHEIM.

(Supreme Court, Special Term, New York County. July, 1899.)

TRADE-NAMES—INJUNCTION—USE OF OWN NAME.

> For 20 years plaintiff had conducted a business in New York under the name of "Arnheim, the Tailor," increasing the business from a small trade to half a million a year. Having dropped the word "Tailor" and adopted the name "Marks Arnheim," two years thereafter defendant, whose father-in-law had once used the name "Arnheim, the Tailor," in New York, but had abandoned it 12 years before and moved to Chicago, opened a store in New York, using the name "Arnheim, the Tailor." She issued receipts and guaranties similar to plaintiff's, ordering them from the same people, used similar boxes, ordered from the same manufacturer, and issued similar catalogues. By the use of a stereopticon she exhibited a photograph of plaintiff as that of the proprietor of her store, and arranged her store practically in the same manner as plaintiff's. *Held,* that plaintiff was entitled to an injunction restraining defendant from use of the name "Arnheim" as a trade-mark.

Suit by Marks Arnheim against Katherine Arnheim to restrain the use of a trade-mark. Judgment for plaintiff.

Weil, Wolf & Kramer, for plaintiff.

M. H. Grossman, for defendant.

RUSSELL, J. In an action to restrain the use of a name as a trade-mark in business, the inquiry must determine whether the de-. fendant simulated that name in such a manner that, with the combination of other business devices, the good will and trade, fairly earned in the past, of him who makes the complaint, would be naturally diverted and impaired, or the public be deceived. Every one may use his own name in some form, but with that distinction of identity which prevents deception, and harmonizes with a business conducted on its own merits, and which does not derive a part of its sustenance from the reputation earned by the foresight and industry of another. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490; Devlin v. Devlin, 69 N. Y. 212; Meneely v. Meneely, 62 N. Y. 427; Caswell v. Hazard, 121 N. Y. 484, 24 N. E. 707. Twenty years before the advent of the defendant into the tailoring business in New York City, the plaintiff, Marks Arnheim, began a small trade in tailoring in the Bowery, and, by undoubted exercise of persistence combined with skill, swelled that business into one of over half a million a year. In 1892 he erected an expensive structure on the corner of Ninth street and Broadway, where he has since continued, giving up the Bowery store in 1895. He advertised his business under the name of "Arnheim, the Tailor," and "Arnheim, Tailor," up to 1895, dropping the designation of the name of the business conducted after that period, and conducting it under the name of "Marks Arnheim," as, by this period of 18 years' steady dealing in that branch of trade, his class of business had become so identified with his name that the necessity no longer existed to designate the character of his business concern. He had spent large sums in advertising in the newspapers, in posters, in forms of letterheads, billheads, and receipts, all of which distinctively connected his own name with his trade. In the year 1897 the defendant, coming from Chicago, opened a store on the corner of Thirty-Seventh street and Broadway, at once branching out as "Arnheim, the Tailor." She combined her business advertisement under that name with the issue of receipts and guaranties very similar to those of the plaintiff, ordering them from the same people who did the plaintiff's work, used similar paper boxes, ordered from the same manufacturer, and issued similar catalogues. By the use of a stereopticon at Broadway and Thirty-Ninth street, she exhibited a photograph of the plaintiff, with the words "Now at Broadway and Thirty-Seventh street, southwest corner," and substantially arranged the exterior and interior of her store, so far as was practicable, in a similar manner to that of the plaintiff. It is easy to see that these devices, in conjunction with the use of the name, would directly tend to divert a part of the plaintiff's business, and confuse those who would be attracted to that business from the reputation and name it had acquired. There is no proof to offset the effect likely to be produced, except the arrangement of some

details which would be likely to put only the careful inspector on his guard, and would not be likely to at once enlighten the casual buying public. The defendant justifies her action by the assumption of right derived from her husband's father, and by repudiation of the acts of her own managing agents wherever they went too far, although she has not repudiated the effect of those acts, or the permanent plan of business conduct, and although the evidence fairly indicates she was an assenting party to all they did. Her line of right from the husband's father is faintly marked. While he did use the name of "Arnheim, the Tailor," in New York, he abandoned it in '1885, 12 years before her assumption of that name and designation in New York, and conducted his business in the city of Chicago. There could be no confusion of identity between the two tailoring establishments located in the cities of New York and Chicago. The great value of the designation of the term "Arnheim," in connection with the tailoring business, is the reputation that term has acquired as located in the city of New York, and as brought to its present power of attraction by the efforts of this plaintiff. It is very plain, not only from the evidence of the defendant's agents, but from the manner in which the defendant's business started in the year 1897 in the city of New York, and was thereafter continuously conducted, that she designedly made use of the good will created by the name, which had then for many years been unfamiliar to the public in the vicinity of New York except as prominently brought to its attention by the plaintiff, and that her conduct of business and the methods employed must inevitably tend to divert some trade from the plaintiff, and produce some confusion and deception in the minds of the public. Let judgment go for the plaintiff for an injunction. Let counsel respectively submit their views as to any assessment of damages, with proposed decision and judgment presented upon notice of settlement.

Judgment for plaintiff.