(86 Misc. Rep. 276)

### B. PAYN'S SONS TOBACCO CO. v. PAYETTE et al.

(Supreme Court, Trial Term, Albany County. June, 1914.)

1. Trade-Marks and Trade-Names (§ 59*)—Infringement—Injunction—Dismissal.

Where, in an action to enjoin the infringement of a trade-mark, it appears that plaintiff for many years has manufactured cigars under the name of "B. & M.," and defendants have for several years used "P. & M.," the initials of their individual names, to designate cigars made by them

and sold until recently in territory other than that in which plaintiff's cigars were sold, and there is no evidence of damages or that any one has been induced to purchase defendant's cigars when he intended to purchase those of plaintiff, the complaint will be dismissed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 23*)—UNFAIR COMPETITION—INJUNCTION.

A manufacturer, who produces and stamps with his trade-mark an article of recognized excellence in the market, acquires a property right in it which equity will protect from infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 26; Dec. Dig. § 23.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 65*)—UNFAIR COMPETITION—REQUISITES.

The essential basis of an unfair competition in the use of a trade-mark is the effort of one person to sell his goods as those of another by misleading.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

Action by the B. Payn's Sons Tobacco Company against Joseph Payette and Julius Mendelsohn for infringement of trade-mark. Complaint dismissed.

Arnold, Bender & Hinman, of Albany, for plaintiff.
Agnew & Agnew, of Plattsburg, for defendants.

RUDD, J. [1] The parties to this action are manufacturers and vendors of cigars; the plaintiff doing business in the city of Albany and selling its goods within a radius of about 100 miles, the defendants doing business as a copartnership under the firm name of Payette, Mendelsohn & Co., in the city of Plattsburg, and selling their product between Plattsburg, somewhat in the state of Vermont, and down through the state of New York as far at least as the city of Hudson.

The plaintiff for many years has used the initial letters of the surnames of individuals formerly interested in business as a trade-mark. Certain cigars manufactured by it are known under this trade-mark as "B. & M." These cigars have been sold to the trade for so many years that customers have been well acquainted with the article thus designated.

The defendants have for several years used the initial letters of their individual names, "P. & M.," to designate their product, which for several years has been sold in a territory north of Albany and in a locality where the plaintiff's goods have not been sold, until within a few years past the defendants have invaded, as is claimed by the plaintiff, the territory round about Albany, thus bringing to the attention of plaintiff what the plaintiff claims to be an infringement of plaintiff's rights in the trade-mark "B. & M."

It is not claimed that defendants' cigars are an inferior article in quality; in fact, the evidence is that the trade price is $5 per 1,000 higher than plaintiff charges for its cigars known as the "B. & M."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r indexes

It is not claimed that there is a misleading in the form of the package as the cigars are offered in boxes, or in the labels on the boxes, or in the bands or labels on the cigars; but the claim made by the plaintiff to this court on the trial was that there is by reason of the audible similarity in the use of the designation "B. & M." and "P. & M." a resulting confusion, to the detriment of the plaintiff.

The evidence shows, not that any purchaser was misled by the appearance of the box, the cigar, or the label, and was thereby induced to purchase defendants' cigar when it was intended to purchase the product of the plaintiff, but evidence was given that at times when purchasers had ordered from a waiter by word of mouth, not having the cigars in view, the cigar known as "B. & M.," that as a result, generally as it appears from a misunderstanding by the waiter, cigars manufactured by defendants, which are known as "P. & M.," were served.

There seems to be no evidence that a purchaser has been induced to purchase defendants' cigars when he intended to purchase those of plaintiff's manufacture. Plaintiff did not prove any damage and on submission stated that it was unable to make such proof.

There is no proof that defendants knew that there was upon the market a cigar made by plaintiffs, known as the "B. & M."; in fact, the defendant Payette testified that he had never heard of the cigar made by the plaintiff known as the "B. & M." up to the time when the defendants placed on the market their product known as "P. & M." This phase of the case is considered in connection with plaintiff's quotation in its brief:

"Unfair competition involves trading upon another's reputation and good will, and the injury is the same regardless of the intent with which it is done. It is well settled in this state that fraudulent intent need not be shown when the necessary and probable tendency of defendant's conduct is to deceive the public and pass off his goods as those of the plaintiff."

Accepting this rule as controlling, are we able in this case under the evidence to say that "defendant's conduct" was intended "to deceive the public and pass off his goods as those of the plaintiff"?

The situation here is not at all similar to what was developed in Higgins Soap Co. Case, 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769. In the Higgins Case Chief Judge Andrews, writing the opinion of the court, says:

"Whether upon equitable principles the remedy should have been awarded in this case upon the facts proved and found is the question in this case. If the right of the plaintiff to relief depended exclusively upon the comparison of the corporate names of the parties, and the inferences to be drawn from such comparison alone and without reference to any extrinsic facts, it might well be doubted whether the names are so similar that the court could find that confusion and injury would be likely to arise."

So here it may "well be doubted whether the names are so similar that the court could find that confusion and injury would be likely to arise."

The remedy here sought is to prevent the liability of injury resulting from such a similarity in the sound of the names of these cigars, irrespective of what the intention of the defendants was.

[2] Competition "should be fair and honest and the manufacturer who produces an article of recognized excellence in the market and stamps it with the insignia of his industry, integrity, and skill, makes his trade-mark a part of his capital in business and thus acquires a property right in it which a court of equity will protect against all forms of commercial piracy."

Having this rule in mind, can a court of equity say that under all the circumstances, the plaintiff having admitted that it cannot rely to sustain its contention upon a similarity as to the treatment of the box or its labels or appearances, or as to anything except as to similarity of sound in the names where the purchaser tells what he wants to buy, that there is in this name, or in the sound of this name, such a property right as calls upon a court of equity for its protection?

Some of plaintiff's cigars were stamped with the initial letters "B. & M.," and some of their cigars were sold to the trade each one having upon it a paper cigar band. This to meet the wishes of the customers.

All of the cigars manufactured by the defendants bore the stamp, somewhat difficult to read because very delicately stamped upon the cigars, of the initial letters "P. & M." They put upon the market no cigars bearing a paper label. There was no proof in the case that any one was induced to buy defendants' cigars under the supposition that they were purchasing those sold by plaintiff.

[3] In order to create an unfair competition it must be based upon an effort by one person to sell his own goods as those of another by misleading. As above stated, there is nothing in the appearance of the cigars or the box, or of the trimmings on the box, which would or could mislead.

It can hardly be assumed that the defendants relied upon the assumption that waiters receiving orders for cigars known as "B. & M." would misunderstand the order and furnish cigars marked "P. & M.," thus injuring the plaintiff. It is as fair to assume, if that theory is followed out, that when a consumer orders a cigar known as the "P. & M." some clerk or waiter would hand to him a cigar known as the "B. & M."

It seems under the evidence as if plaintiff had failed to establish a cause of action which requires the interference of a court of equity, and therefore the complaint of the plaintiff is dismissed.

Complaint dismissed.