Common Pleas Court of Cuyahoga County.

THE MARSHALL DRUG CO. v. THE UBERSTINE-FRAIBERG DRUG CO. ET AL.

Decided April 1, 1931.

*Maurer & Bolton,* for plaintiff.
*Sol Edgert,* for defendants.

STEPHENSON, J.

There is no geographical or independent descriptive word or words involved in this case.

In short the Marshall Drug Company is an old, established Company, conducting forty-eight retail and one wholesale store in and around the city of Cleveland for many years.

Plaintiff claims that the word "Marshall" because of its long use by plaintiff, because of its wide-spread advertising, and because of the fact that under that name, by

its fair treatment of the buying public, it has secured a large part of the patronage of those dealing in its line and thereby has built up a large and lucrative business, has become a valuable trade-name to plaintiff; that in effect, the word "Marshall" in and around Cleveland has become the synonym for reasonable prices and fair dealing, and by reason of these facts plaintiff is entitled to its use to the exclusion of all other persons regardless of circumstances, and that it is entitled to the exclusive use of the standard color of design heretofore adopted and used by it. That it has the right to use such name in manner and form as it has heretofore used it; that it has used the monogram "M over D" in connection with its business for such length of time that it likewise has become a valuable asset to its business as a trade-name, and because of these facts it asks that defendants be restrained from using the word "Marshall," "Marshall Drug" and the monogram "M over D."

It is admitted that plaintiff for a number of years has conducted a drug store at the southwest corner of Coventry and Mayfield Roads in the city of Cleveland and that defendant under the name of the Uberstine-Fraiberg Drug Company has conducted a similar store on the opposite corner and has adopted a similar monogram to that of plaintiff, to-wit: "U over M"; that Isadore Marshall recently purchased and is now the owner of 50 per cent. of the capital stock of the Uberstine-Fraiberg Company; that Isadore Marshall's name prior to March, 1926, was "Israel Motoschefsky" and at such time he changed it to "Marshall"; he having, in October, 1925, been licensed as a registered pharmacist; that he has been in the drug business in the city of Cleveland before and since 1925; that the Secretary of State has not yet granted to defendants the right to the use of the name "Uberstine-Marshall, Inc."

Plaintiff avers and defendants deny that the word "Marshall" was used by them for the purpose of misleading the public or creating confusion and thereby gaining a part of plaintiff's trade and reaping the benefit of its advertising and business reputation.

The proof shows beyond cavil that the word "Marshall" is a valuable asset to plaintiff as a trade name; that de-

fendants have, to an appreciable extent, simulated plaintiff's sign. The photograph of the sign on defendants' window does show that the word "Marshall' is emphasized and the word "Uberstine" is minimized. Mr. Uberstine admits that the name "Uberstine-Fraiberg Drug Company" has been in existence for five years or more, has a good business and good and valuable business reputation. The proof does show that some customers have been confused.

Defendants claim Isadore Marshall will be damaged in his business if he is not permitted to use the word "Marshall" in connection therewith.

Defendants further claim that the word "Marshall" is the surname of a stock-holder owning 50 per cent. of the stock of the corporation and they have a right to use it.

Defendants further claim that to avoid confusion they have ceased to use the word "drug" in connection with their business and have placed under their sign, admittedly in smaller letters, the words "Not connected with any other firm."

Plaintiff further urges that because defendants compose a corporation they have no inherent right to name it "The Uberstine-Marshall Company." Defendants claim, of course, they can call it what they please—and these are substantially the issues for the court's determination.

The courts of Ohio have original and exclusive jurisdiction of the parties and subject matter in this cause and in so far as Ohio authorities are decisive of the issues herein made, the court must follow them. Where they are silent, the court must seek for the weight of authority in the Federal courts and in the courts of last resort of states that Ohio follows.

Plaintiff hangs its case very largely on the decision of our Supreme Court in *Medicine Company* v. *Glessner*, 68 Ohio St., 338. This is an illuminating case but not on all fours with the case at bar. The facts in that case make a plain call for equitable interference. This case is not so plain.

The 68th Ohio State is a label case. The name on the

label was the same, except that the defendant added the word "Famous." The labels were much alike in size and general appearance.

It was easy enough for the Circuit Court to make its finding of fact that:

"In adopting the label and in the manner of formulating their label and trade-mark, the defendants designed, as nearly as possible, to imitate plaintiff's trade-mark and label for the fraudulent purpose of deceiving the public and defrauding plaintiff as well, by causing it to be believed by the public that defendant's remedy was that of plaintiff, intending thereby to profit by the good will of plaintiff's said business and the fame of his remedy with the trade and general public."

Judge Davis in this case, in the first and third syllabi, recites practically all the law relative to trade-marks and trade-names. He says:

"In general, *generic words, geographical names* or *the names of persons* cannot be valid trade-marks; but when a geographical name *is not used* to denote location, and is used in a merely fictitious sense to indicate ownership and origin independent of location, it may be a good trade mark; and the name of the inventor or original maker of an article of traffic, if not used in a way to deceive or defraud, will be protected as a trade mark \* \* \*. When a person has established a business and reputation for the manufacture and sale of an article of traffic, under a *particular name* and *style of label,* whether the words and devices adopted by him constitute a trade-mark or not, another person, *whether it be in his own name or not,* cannot lawfully assume *the same name* and label, or the *same* with slight variations, so as to induce the belief that the imitation is the original and such use of such *name* and label will be enjoined on the ground of fraud."

Warren W. Drake could have advertised and sold a "Croup Remedy." He could have gone further and used the words "Drakes Croup Remedy" and if he was in fact a doctor, he could have used the words "Dr. Drakes Croup Remedy," but when he added the word "German," under the circumstances as they existed, he went one step too far.

"German" is both generic and geographical, but in plaintiff's advertisement, it was used in a fictitious sense

merely to indicate ownership and origin independent of location.

A number of English and American cases are cited to support this proposition of law.

In the case under consideration we can cast aside strictly generic, geographical and descriptive words, for we are dealing with a proper name, or at least the surname of a proper name. It may be insisted that the word "Marshall" is generic, and it is in a sense, as it comprehends all persons properly bearing that name. Is the name "Marshall" as used in this case generic?

Has the plaintiff such a property in the words "Marshall" and "Marshall Drug" as gives it the right to enjoin its use by other concerns in the same line of business, where a stock-holder bears the name of "Marshall" *bona fides* and has it such a property in the design or monogram "M over D," as under the same circumstances, it has the right to enjoin defendants from the use of the design or monogram "U over M"?

When these questions are properly answered this case will be properly decided.

It is difficult for the chancellor who must search the consciences of the litigants to arrive at the conclusion that defendants have at all times been using the words "Marshall," "Marshall Drug" and the monogram "U over M" in good faith and without any hope or expectation that they would reap any benefit from the name and design that plaintiff had labored for two-score years to make valuable and in the exploitation of which they had expended much more than a million dollars.

If affairs had been permitted to take their natural course, the name of defendant would have been "The Uberstine-Motoshefsky Drug Company," but some idea percolated into some one's brain that the combination "Uberstine-Motoshefsky" was not rhythmical, and, as this is an era of rhythm, the appellation would not appeal to the purchasing public.

The words "Uberstine-Motoshefsky" do sound a bit sectarian, but they would be most euphonious to one of the Hebraic persuation—but "Uberstine-Marshall" would ap-

peal to both Jew and Gentile. Could this have been a possible reason for the change?

In the consideration of this case, we cannot, in all the phases of the case, confound the law governing *trade marks* with the law governing *trade names*.

"A trade name will be protected as such, where, if it was a trade-mark, it could not be protected." *G. W. Cole Co.* v. *Am. Cement & Oil Co.*, 130 Fed. Rep., 703.

The reason for this holding is obvious; so much so that it is unnecessary to inquire into it.

The Circuit Court of Cuyahoga county delivered a very able opinion on the use of trade-names in 1912, and we have not departed from the law therein announced. *The Cleveland Transfer & Carriage Company* v. *M. R. Brailey et al.*, 22 C. C. (N. S.), 486.

The court in the above case quotes Nims on Unfair Business Competition, Section 1, viz.:

"Unfair competition is not confined to acts directed against the owners of trade-marks or trade names, but exists wherever unfair means are used in trade rivalry. Equity looks not at what business the parties before the court are engaged in, but at the honesty of or dishonesty of their acts. It is unfair to pass off one's goods as those of another person; it is unfair to imitate a rival's trade name or label; but he who seeks to win trade by fair means or foul is not limited to these methods. He may copy and imitate the actual goods made or sold by a competitor, he may libel or slander these goods, make fraudulent use of a family name, or trade secrets, of corporate names, of signs, of threats, of action; he may construct buildings which are reproductions of peculiar buildings of a rival, thus producing confusion in the minds of purchasers, which enables him to purloin his rival's trade, and in a hundred other unfair ways secure another's trade. All acts done in business competition are either fair or fraudulent, equitable or inequitable, whether they relate to marks or not; and it is believed that the question of trade-marks will soon be lost sight of in discussing unfair competition, in the problem of securing, through the principles of equity, full protection to every merchant against unfair business methods."

The above is a complete and succinct statement of the law relative to trade-names. Likewise the finding, opinion

and decree of Judge Overmyer in *Lichtenstein* v. *Levin,* 27 N. P. (N. S.), p. 337.

Few cases involving trade-names have reached our Supreme Court and while this court is not required to follow the opinion of a court of concurrent jurisdiction, it will always do so when the case is well reasoned. Defendants advance as a proposition of law, and it is the law, that—

"The right of a person to use his family name is regarded as a natural right, and he may so advertise his business, notwithstanding another person of the same name may, in that name, manufacture and sell goods of the same kind." 26 Ruling Case Law, Sec. 33 and cases cited.

But this rule has its limitations, viz.:

"An individual may use his own name in his business, even though he may interfere with or injure the business of another person of the same name, *provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Idem.*

Also:

"The right of a person to use his own name in business, notwithstanding the prior use of the name by others in a similar business *does not extend to a corporation of which he is a promoter and member."* 26 Ruling Case Law, Sec. 22; *Charles S. Higgins Co.* v. *Higgins Soap Co.,* 144 N. Y., 462, 39 N. E., 490.

The late, lamented Judge Sullivan gave a comprehensive resume of the trade-name law in the case of *The Cleveland Opera Co.* v. *The Cleveland Civic Opera Assn.,* 22 O. A., p. 400.

Coming to the question of Design and Form. We find this proposition fully treated in 26 Ruling Case Law, Sec. 56 and cases cited.

As this court view it, this case is hit squarely by the case *Rogers* v. *Rogers,* 35 U. S. Appeals, p. 843. The above case flatly decides—

"That a body of associates who form a corporation for manufacturing and selling a particular product, are not lawfully entitled to employ as their corporate name in such business, the name of one of their number to compete with an established concern of the same name, en-

gaged in a similar business and to divert the latter's trade to themselves, when it appears that such name was intentionally selected for the purpose of confusing the identity of the products of both and leading purchasers to buy those of one for those of the other."

True, this case deals with a "particular product," but when applied to a "particular business" the rule is the same. The cases *Globe-Wernicke Co.* v. *Safe Cabinet Co.*, 92 Ohio St., p. 532, and *Pfleuger Co.* v. *Enterprise Mfg. Co.*, 85 Ohio St., p. 450, are helpful, only in so far as they restrict the injunctive relief that may be granted by the court.

Are the defendants engaging in fair or unfair competition?

The court refers again to Nims on Unfair Business Competition, Sec. 1.

"The right of a person to use his family name is regarded as a natural right," but the person must use his *family* or *natural name.*

He cannot resort to artifice, however, colorable, in order to acquire a name that he can make of it a commercial asset to the prejudice of another who not only bears the same name, but who by industry, fair dealing and judicious advertising over a long period of time, has made the name valuable.

Isadore Motoschefsky had a right, under our laws to change his name. He could change it to Smith, Jones or Marshall. He chose to change it to Marshall. He gives no reason why he selected the name "Marshall," rather than any other name.

It may be insisted that the court has no right to inquire into Motoschefsky's motive for changing his name. A court of law probably would not, but form is just so much ether to a Court of Equity. The Chancellor does not give form passing notice. He goes straight through it until he strikes "substance"—then he considers the substance.

Motoschefsky was a pharmacist. If he was ambitious, he would naturally look forward to the time when he could own a business, and naturally, he would desire a profitable business. His name, evidently, did not suit him, although it was the name God gave him. Why change it?

The Bard of Avon said:

A rose by any other name would smell as sweet,"
"There's nothing in a name,

but he was not speaking from a commercial standpoint just then.

"Motoschefsky" would not "smell as sweet" in the drug business, in and around Cleveland, as "Marshall."

The name "Motoschefsky" in the drug business in and around Cleveland was new, experimental and valueless, while the word "Marshall" was old, established and valuable.

The names Jones, Smith, Brown, White, Black and Green are good old names, but they would not, in all probability, be worth a "hooter" in the drug business in and around Cleveland. The court could not attach any ulterior motive to Motoschefsky in his change of name, but for subsequent developments.

"The bells of the Future
Are rung by the ropes of the Past."

Motoschefsky evidently purchased the interest of Fraiberg in the Uberstine-Fraiberg Drug Company. He at least is owner and holder of 50 per cent. of the stock in the proposed "The Uberstine-Marshall Drug Co., Inc." The Uberstine-Fraiberg Drug Co. was an established company, doing a good business and with an established good will and yet it would sacrifice the Uberstine-Fraiberg name for the Uberstine-Marshall name.

Was it a sacrifice? It must have been, unless the word "Marshall" used in connection with the business would prove more attractive than either "Fraiberg" or "Motoschefsky."

If defendants could use the name "Marshall," "Marshall Drug" and the design "U over M" indiscriminately and without molestation, they could reap a part of its benefits by making the purchasing public believe they were dealing at a Marshall Drug Store, when in fact they were dealing at an Uberstine-Motoschefsky Drug Store.

Defendants not only used the name "Marshall" and "Marshall Drug" but they simulated it in back-ground,

color, size and form of letters and on the store at Coventry and Mayfield Roads, they without doubt gave the word "Marshall" unquestionable prominence over the word "Uberstine." The photograph portrayed this situation beyond all cavil.

Coming now to the design or monogram. From the evidence, the Uberstine-Fraiberg Drug Co. did not use a design or monogram. It was not until Motoschefsky under the changed name of Marshall bought Fraiberg's interest that it sought to use the design. Plaintiffs had used their "M over D" monogram for years. It was information to the public that they were buying plaintiff's goods and plaintiff had a proprietary interest in it and defendants had no right to simulate it, even if they did use a different letter and used the first letter of the name of the principal stockholders of the corporation. This was likewise a part of the general scheme to unfairly use the name and design to which plaintiff had given value. 26 Ruling Case Law, Sec. 56 and cases cited.

The court has heretofore found that Motoschefsky under his new name of Marshall was a promoter and stockholder in the proposed new corporation, the Uberstine-Marshall Drug Co., Inc.

The court further finds that the words "Not connected with any other firm" placed under the words "The Uberstine-Marshall Drug Co." was *post motam litem* and while it might, in a small way, tend to prevent confusion, it was to some extent an admission that defendants were in fact creating confusion.

The finding and decree will be for plaintiffs.

Defendants are perpetually enjoined from using the words "Marshall" and "Marshall Drug" in connection with their business as a corporation, and they are perpetually enjoined from using said monogram or design "U over M" in such a way as to mislead the public into believing that the goods they are purchasing are the goods of plaintiff.

It is adjudged that defendants pay the cost of this proceeding.

Defendants' exceptions are noted. Appeal bond fixed at $200.