**NOMA LITES, Inc., Plaintiff,**
v.
**LAWN SPRAY, Inc., and Walter H. Steiner, Defendants.**

Civ. A. No. 15264.

United States District Court,
E. D. New York.

March 18, 1955.

Morris Kirschstein, New York City, for plaintiff.

Mock & Blum, New York City, for defendants.

BRUCHHAUSEN, District Judge.

By this motion, plaintiff seeks an injunction pendente lite in an action involving alleged unfair competition on the part of the defendants.

The plaintiff, in its complaint, alleged that in October, 1954, it began preparations for the manufacture and marketing of a new underground sprinkler system for lawns and gardens and in connection therewith launched an advertising and selling campaign including the preparation of distinctive advertising material; that in December, 1954, it commenced the manufacture and sale of the system and adopted and commenced the use in connection with same of the trade-mark "Noma Spray" printed in green color with the word "Spray" displayed in peculiar slanting type and preceded by the legend "Make It Rain With"; that the plaintiff designed the hose in a particular shape and with ornamentation; that the defendant Lawn Spray, Inc. was organized on or about December 30, 1954; that the latter has prepared and circulated printed material and cartons, closely resembling those of the plaintiff; that the defendants manufactured and offered for sale under the trade-mark "Lawn Spray" a sprinkler system of the identical description and size of the plaintiff's system and that the defendants' acts have deceived and misled purchasers into believing that the sprinkler system sold or offered for sale by them are those manufactured or originated by plaintiff.

The plaintiff prays for an order restraining the defendants from using the forms of advertising, simulating that issued by the plaintiff and for related relief.

There is no material dispute of facts. The Court has examined the exhibits produced upon the argument of the motion and the printed material submitted in connection therewith. It would be difficult for the defendants to more closely follow the work of the plaintiff without actually copying it. The issue is mainly one of law.

While the law favors competition and incidental thereto permits practices involving undersale of an originator's product, it does not countenance fraudulent acts. Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416.

If the material used by a competitor is calculated to deceive the public, its use should be prevented. On this point the Court in the case of Eastern Construction Co., Inc., v. Eastern Engineering Corporation, 246 N.Y. 459, 463, 159 N.E. 397, 399, said:

"Common right to use geographical or descriptive terms, even individual right to use one's own name, does not include a use which is calculated to deceive. Corning Glass Works v. Corning Cut Glass Co., 197 N.Y. 173, 90 N.E. 449; Ball v. Broadway Bazaar, 194 N.Y. 429, 87 N.E. 674; Higgins Co. v. Higgins Soap Co., 144 N.Y. 462, 39 N.E. 490, 27 L.R.A. 42, 43 Am.St.Rep. 769."

The defendant contends that the slanting type used for the printing of the word "Spray" has not acquired such a "secondary meaning" so as to preclude its use by anyone, unless its use has acquired a common-law secondary meaning, or a distinctive meaning, as used in the Trade Mark Statute, 15 U.S.C.A. § 1052, evidence whereof by said Act must exist for a period of five years.

The defendant also asserts that there can be no proof of "secondary meaning"

until overwhelming evidence of consumer confusion is proven, also that the plaintiff's failure to copyright its literature cast it into the public domain and that even if copyrighted, apt pictures and languages describing the article are proper provided the defendant printed its name, so that in the final analysis the only resemblance is the apparatus itself.

Lastly, the defendant claims that a number system is not capable of protection.

The plaintiff urges that "secondary meaning" is unnecessary, the test being whether there is an attempt by defendant to pass off its goods as those of the plaintiff.

It does not appear that defendants' activities will be stopped, or even curtailed, if it changes the format of its advertising and sales promotion. On the other hand plaintiff may be precluded from developing a personality in this field, at the inception, if defendant be permitted to create an aura of confusion.

The principal consideration is whether the defendant is attempting "to palm off its goods" as those of the plaintiff. See Avon Periodicals v. Ziff-Davis Pub. Co., 282 App.Div. 200, 122 N.Y.S. 2d 92, and Santa's Workshop, Inc., v. Sterling, 282 App.Div. 328, 122 N.Y.S.2d 488. The "palming-off" theory appears to have superseded the so-called "secondary meaning".

The case of Town Taxi Service Corp. v. Vet-Cab, Inc., Sup., 104 N.Y.S.2d 915, is a complete treatise on this subject. As stated at page 927 therein, quoting from Mr. Justice Shientag in the case of New York World's Fair 1939 v. World's Fair News, 163 Misc. 661, 297 N.Y.S. 923, 927, 928, the Court said:

" 'Actual competition is not necessary as a basis for injunctive relief to prevent the imitation of a name. * * * It is not essential to prove actual confusion, deception, or bad faith as a basis for injunctive relief to prevent the use of a name which is likely to lead to confusion. * *

The likelihood of confusion justifies injunctive relief.' "

In the case of Higgins Co. v. Higgins Soap Co., 144 N.Y. 462, 463, 39 N.E. 490, 27 L.R.A. 42, the defendant was restrained from using a certain name although it was the surname of one of the incorporators. At page 468 of 144 N.Y., at page 491 of 39 N.E., the Court said:

"The sole test of liability is whether the acts done, either in organizing the defendant or in the prosecution of its business subsequently, invaded any right of the prior corporation, or exceeded the boundaries of fair competition."

The case of Lucien Lelong, Inc., v. Lander Co., 2 Cir., 164 F.2d 395, cited by defendant, in connection with "secondary meaning" is not in point. To protect its odd-shaped perfume bottle, plaintiff therein claimed a "secondary meaning". Here no such claim is made. Plaintiff in the cited case sought protection beyond the term of its patent.

The case of Upjohn Co. v. William S. Merrell Chemical Co., 6 Cir., 269 F. 209 is distinguishable. The plaintiff therein sought to enjoin the manufacture and sale of pharmaceutical tablets of a particular size, shape, and color, but there apparently was no attempt by defendant to "palm-off" its product as that of the plaintiff. It must be borne in mind that the plaintiff herein does not seek to enjoin the style of the product itself, but merely the marketing thereof.

Likewise, the case of Mavco, Inc., v. Hampden Sales Association, 273 App.Div. 297, 77 N.Y.S.2d 510, is easily distinguished, for in 77 N.Y.S.2d at page 518 the Court pointed out:

"There was no simulation of plaintiff's general mode of marketing, of packaging or of its advertising".

In the last two cases above mentioned, the styling of the product was the subject of the restraint, not the advertising and promotion thereof.

The case of Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416, cited

by defendant, is not in point. The plaintiff therein sought to restrain defendant from manufacturing and selling steak knives which were a slavish imitation in design of those of the plaintiff. Once again it was the product itself that plaintiff sought to enjoin, not the sales promotion thereof.

The gist of the cases, cited by the defendant is that unless one has a clear-cut patent, or has established a "secondary meaning" by long and extensive usage, general characteristics, such as shape, color, design, etc., will not be interfered with by the courts even if those characteristics are deliberately copied. It would be like someone trying to claim the right to the waters of the ocean.

In the cases above cited, each defendant prominently indicated its own corporate identity. In the case at bar no question is raised as to characteristics of the product itself, although with the exception of color, they seem identical. This case appears to be the converse of those cited by defendant, for by devious means, defendant attempts to fasten its corporate identity to the plaintiff's, and it is precisely this confusion and fraud on the public that the law seeks to avoid.

■ The defendant would not be prejudiced if its price list were of a different color, and its numerals in different sequence, or by the printing of the word "Spray" in different style. On the other hand, even if defendant be acting in good faith, confusion in the minds of the consumer may be created, and the law abhors this.

Authorities cited by the plaintiff hold that even if there be no "palming-off", the law will protect property rights of commercial value from unfair infringement. Henry Glass & Co. v. Art-Mor Togs, Sup., 101 N.Y.S.2d 538; Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., Sup., 101 N.Y.S.2d 483.

The case of International Latex Corp. v. Scheinberg, 263 App.Div. 861, 32 N.Y.S.2d 591, cited by the plaintiff, involved advertising, and the Court protected the plaintiff.

Likewise the case of American Chicle Co. v. W. J. White Chicle Co., D.C., 196 F. 977, is in point in that the advertising and promotion was enjoined but not the style of the product itself.

■ The tendency of the law is to enforce higher standards of fairness and commercial morality in trade, depending upon the character and nature thereof. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570.

■ Defendant urges that in failing to copyright its literature, plaintiff relegated it to the public domain, citing the case of National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594. The plaintiff therein sought to enjoin the publication itself and not a publication in connection with a product and even in that case, at page 603, continuing the quotation used by defendant at page 19 of its brief, the Court pointed out that:

"There was no reasonable ground for supposing that readers would mistake one for the other."

The case of G. Ricordi & Co. v. Haendler, 2 Cir., 194 F.2d 914, cited by defendant, is not in point. The question concerned a book itself and not literature in connection therewith. This distinction is also made in the cited case of Chautauqua School of Nursing v. National School, 2 Cir., 238 F. 151.

The cases cited by plaintiff support the principle that the preparation and distribution of advertising literature, leading to confusion, will be enjoined.

■ Defendant contends that numeral systems are not subject to protection and cites as authority the case of Germanow v. Standard Unbreakable Watch Crystals, Inc., 283 N.Y. 1, 27 N.E.2d 212. While the case is persuasive of its point, it does not seem controlling. While, as here, the Court said that the ultimate consumer would not be confused (the case involved watch crystals), for the numbering system would be observed only by the

distributor, the Court admitted that it was trying to prevent a monopoly by plaintiff who had 50% of the world's business in this field. Several other cases bear out this contention of defendant. William H. Keller v. Chicago Pneumatic Tool Co., 7 Cir., 298 F. 52; Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 6 Cir., 135 F. 625; Humphreys Homeopathic Medicine Co. v. Hilton, C.C., 60 F. 756, but each of those cases can be distinguished in the light of the many similarities tending toward confusion in this case.

Motion granted. The plaintiff shall give security in the sum of $500. Submit order.