HARRY GERMANOW et al., Copartners under the Name of GERMANOW-SIMON MACHINE COMPANY, Appellants and Respondents, *v.* STANDARD UNBREAKABLE WATCH CRYSTALS, INC., Respondent and Appellant.

Argued March 8, 1940; decided April 23, 1940.

*Byron A. Johnson* for plaintiffs, appellants and respondents. The judgment properly restrained defendant's simulation and use of plaintiffs' number system. (*Dennison Mfg. Co. v. Thomas Mfg. Co.*, 94 Fed. Rep. 651; *Shaver v. Heller & Merz Co.*, 108 Fed. Rep. 821; *Sarter v. Schaden*, 125 Iowa, 696; *Hanover Star Milling Co. v. Metcalf*, 240 U. S. 403; *Coleman v. Crump*, 70 N. Y. 573; *Fuller v. Huff*, 104 Fed. Rep. 141; *Gillott v. Esterbrook*, 48 N. Y. 374; *Collins v. Reynolds Card Co.*, 7 Abb. N. C. 17; *India Rubber Co. v. Rubber Comb Jewelry Co.*, 13 J. & S. 258; *Humphreys' Specific Homeopathic Medicine Co. v. Wenz*, 14 Fed. Rep. 250; *Shaw Stocking Co. v. Mack*, 12 Fed. Rep. 707.) The defendant's use of plaintiffs' number system is designed to facilitate the passing off of defendant's crystals as those of the plaintiffs. (*Vulcan v. Myers*, 139 N. Y. 364; *Warner & Co. v. Lilly & Co.*, 265 U. S. 526; *Fairbank Co. v. Bell Mfg. Co.*, 77 Fed. Rep. 869.) The defendant has employed to dispose of its competing merchandise a system of service created and used by the plaintiffs to sell their own goods. (*Searchlight Gas Co. v. Prest-O-Lite Co.*, 215 Fed. Rep. 692; *Prest-O-Lite Co. v. Davis*, 209 Fed. Rep. 917; *Meccano v. Wagner*, 234 Fed. Rep. 912; *Meyer v. Hurwitz*, 5 Fed. Rep. [2d] 370; *Neva-Wet Corp. v. Never Wet Processing Corp.*, 277 N. Y. 163; *Tiffany & Co. v. Tiffany Productions*, 262 N. Y. 482; *Wolfe v. Burke*, 56 N. Y. 115; *Prunier v. Prunier's Restaurant & Cafe*, 159 Misc. Rep. 551; *International News*

*Service* v. *Associated Press*, 248 U. S. 215; *Schechter Corp.* v. *United States*, 295 U. S. 495.) Defendant, by its use of plaintiffs' unique gauge, is enabled to duplicate plaintiffs' numbers for round crystals. (*Menendez* v. *Holt*, 128 U. S. 514; *American Chain Co.* v. *Carr Chain Works*, 141 Misc. Rep. 303; *Fisher* v. *Star Co.*, 231 N. Y. 414; *Gillott* v. *Esterbrook*, 47 Barb. 465; *Coats* v. *Merrick Thread Co.*, 149 U. S. 562.)

*Edward H. Cumpston* for defendant, respondent and appellant. A series of letters, numbers or other ordinary symbols, installed in use by the dealers or public, solely to describe and distinguish the sizes, styles, grades, qualities or other physical characteristics of a series of articles of commerce, cannot be monopolized as a property right by the manufacturer of the articles. (*Bristol* v. *E. L. A. Society*, 132 N. Y. 264; *Affiliated Enterprises* v. *Gruber*, 86 Fed. Rep. [2d] 958; *International News Service* v. *Associated Press*, 248 U. S. 215; *Holmes* v. *Hurst*, 174 U. S. 82; *Koehler* v. *Sanders*, 122 N. Y. 65; *Conover* v. *Coe*, 99 Fed. Rep. [2d] 377; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169; *Kellogg Co.* v. *National Biscuit Co.*, 302 U. S. 654; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sand. 599; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51; *Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 N. Y. 163; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537; *Coats* v. *Merrick Thread Co.*, 149 U. S. 562; *Deering Harvester Co.* v. *Whitman & Barnes Mfg. Co.*, 91 Fed. Rep. 376; *Stevens Linen Works* v. *Don & Co.*, 121 Fed. Rep. 171; 127 Fed. Rep. 950; *Electric Auto-Lite Co.* v. *P. & D. Mfg. Co.*, 78 Fed. Rep. [2d] 700; *Stransky Products Corp.* v. *Tate Co.*, 22 Fed. Rep. 759; 100 Fed. Rep. [2d] 1021; *Dennison Mfg. Co.* v. *Scharf Tag, Label & Box Co.*, 135 Fed. Rep. 625; *Dixie Vortex Co.* v. *Lily-Tulip Cup Corp.*, 19 Fed. Supp. 511; 95 Fed. Rep. [2d] 461; *Keller, Inc.*, v. *Chicago Pneumatic Tool Co.*, 298 Fed. Rep. 52; *Autoline Oil Co.* v. *Indian Refining Co.*, 3 Fed. Rep. [2d] 457.) The tort of " passing-off," as a matter of law, cannot be predicated on defendant's placing in the hands of its dealers articles bearing size numbers which are not adapted

to be, nor actually displayed, nor even known to the public, so as to be capable of constituting a " means of defrauding the public." (*DuPont Cellophane Co.* v. *Waxed Products Co.*, 85 Fed. Rep. [2d] 75; *Stevens Linen Works* v. *Don*, 121 Fed. Rep. 171; 127 Fed. Rep. 950; *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U. S. 446; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118; *Elgin Nat. Watch Co.* v. *Illinois Watch Case Co.*, 179 U. S. 665; *Warner & Co.* v. *Lilly & Co.*, 265 U. S. 526; *Charles Broadway Rouss, Inc.*, v. *Winchester Co.*, 300 Fed. Rep. 706; *Munro* v. *Tousey*, 129 N. Y. 38; *White Studio* v. *Dreyfoos*, 221 N. Y. 46; *Dixie Vortex Co.* v. *Lily-Tulip Cup Corp.*, 19 Fed. Supp. 511; 95 Fed. Rep. [2d] 461; *Kaeser & Blair* v. *Merchants' Assn.*, 64 Fed. Rep. [2d] 575; *Downes* v. *Culbertson*, 275 N. Y. Supp. 233.) Neither the size nor color of the crystal envelopes, nor the scales for measuring the same, are capable of being monopolized as any sort of property right, nor of being used to deceive. (*Matter of Waterman*, 34 App. D. C. 185; *Diamond Match Co.* v. *Saginaw Match Co.*, 142 Fed. Rep. 727.)

CONWAY, J. These are cross-appeals in an action commenced in April, 1937, to restrain acts of unfair competition. The plaintiffs, copartners, are the largest manufacturers of their product in the world, employing approximately eighty people, and since 1916 have been engaged in the manufacture of unbreakable watch crystals, known as " G-S " crystals, made of celluloid or similar material. They have also developed and marketed a cabinet containing drawers to store the product. This cabinet is known in the jewelry trade as the " G-S " cabinet, and plaintiffs' trade-mark " G-S " is affixed by label and stamped on the drawer handles. The plaintiffs have likewise perfected a numbering system for fancy crystals to facilitate the *selection* of the particular crystal sought. Such numbering system is used in connection with plaintiffs' cabinet.

For an understanding of the issues involved and the facts out of which they arose, it is necessary to set forth an outline of the acts complained of, a description of the

product manufactured by the plaintiffs and defendant, an explanation of the numbering system and a description of the cabinets used.

In 1916 plaintiffs designed a special gauge or ruler, made of metal, about four inches long, to measure the diameter of the round (as distinguished from fancy) crystals manufactured by them. This gauge had gradations of fortieths of an inch, beginning one-half inch from its end. The trial court found that the measurements obtained were used by plaintiffs as descriptive or size marks and not to indicate the source of manufacture and also found those measurements to be a " stock-filling and numbering system," i. e., the measurements by the gauge became the numbers of the round crystals. It is conceded that those numbers were not part of the " numbering system " of the plaintiffs, which applied to fancy crystals only.

The defendant, incorporated in 1927, is a competitor of the plaintiffs. Beginning in 1927, the defendant offered to the trade a gauge or ruler based upon the same arbitrary system of measurement as that developed by the plaintiffs to measure the round crystals manufactured by them. Defendant's gauge differed in shape from that of plaintiffs and carried defendant's trade-mark. Since 1927 defendant has advertised and sold round crystals in envelopes marked with numbers obtained by measuring with such round crystals scale and the plaintiffs have known of that fact during that entire period.

In 1927 the plaintiffs began to sell their round crystals in blue envelopes, and, although defendant had previously used a brown envelope for such purposes, it, too, subsequent to 1927 began to use a blue envelope of almost identical size and shade.

The trial court also found that since 1927 at least four specifically named competitors of the plaintiffs and defendant employed small, rectangular, transparent paper envelopes in which round and unbreakable crystals were sold.

Plaintiffs, in 1931, commenced to place their fancy crystals in ribbed glassine envelopes and they were the first to use such envelopes for that purpose. Thereafter defendant made use of a similar glassine envelope.

Likewise, in 1931, plaintiffs were the first to use a blue insert envelope which was enclosed within the ribbed glassine envelope. In 1934 defendant adopted an almost identical insert envelope for the same purpose. In that year plaintiffs complained of defendant's use of such insert envelope and as soon as its stock was exhausted the defendant changed the color of its inner envelope from blue to green and of its printing ink from blue to black.

In 1931–1932 plaintiffs issued a catalogue containing approximately one thousand illustrations of watch crystals of various sizes and shapes arbitrarily arranged to conform to their new numbering system. The letters preceding the numbers in plaintiffs' numbering system were the letters previously used by a competitor which manufactured glass crystals. They indicated the shapes of the crystals. Defendant adopted a numbering system as follows: Each fancy crystal manufactured by it received a number exactly 200 lower than that given to a similar crystal manufactured by plaintiffs. The letters which preceded the numbers, with the exception of three, were different.

The defendant also began the practice of using envelopes on the front of which it printed its own number and also the number used by plaintiffs for the same crystal. The notation on defendant's envelope read "same size as G-S ———." After this action was commenced defendant omitted plaintiffs' trade-mark but continued to print plaintiffs' number on its envelopes as well as its own number.

The defendant printed its numbering system in its own catalogue and also, in 1934, issued to the jewelry trade a comparative list which contained each crystal number contained in the plaintiffs' numbering system and opposite each such number the defendant's own number for the same crystal.

Neither plaintiffs nor defendant sells to the public but only to jewelers or retailers or jobbers. The public sees neither the numbering system nor the envelope containers for the crystals.

The record is barren of any proof of any suggestion by defendant that there be a palming off or passing off of defendant's goods as those of plaintiffs.

At the trial the plaintiff Germanow testified that the numbers used in the numbering system were arbitrary numbers and had no relation to the size or dimensions of the crystals illustrated in their catalogue or to the dimensions printed on the envelope containers.

To illustrate the envelope containers and the printing on them I shall take plaintiffs' Exhibit 26, subdivisions 5, 6, 7 and 8. (See footnote.*) The defendant's containers

*                          Exhibit 26.

**5**

E 235     SUC
SAME SIZE AS S-435
Old No. 5
SUC
E 235
21.5 x 21.5
BENRUS

**6**

G-S NUMBER
S435
Old No. 175
G-S
S 435
21.5 x 21.4
BRUNER EMERSON WESTFIELD

**7**

S 575     SUC
SAME SIZE AS X-775
SUC
S 575
21.5 x 17.5
STAR - LEWITT

**8**

X775
Old No. 239
G-S
X 775
21.5 x 17.5
LEWITT
ASK FLEXO FOR CRYSTALS

are of light green color and the plaintiffs' light blue. For the purpose of this illustration the color is of no consequence since the containers could not be mistaken for each other even if identical in color. Defendant has indicated in every possible way by print that the container and the crystal are not plaintiffs'.

What the defendant has done or attempted to do for its own benefit is to put on its envelope a number which will enable the jeweler or retailer to put its envelope containers into the same compartment and drawer of the plaintiffs' cabinet with similar crystals of the plaintiffs. In fact, the case revolves about the desire of defendant to enable the jeweler or retailer to accomplish that result. We must determine whether that is unfair competitive practice under the facts of this case, which is unusual in that the consumer purchases neither from plaintiffs nor defendant and does not see the product until it is in his watch. Plaintiffs' theory is that it is defendant's *intention* that a jeweler may palm off defendant's crystals for plaintiffs', if he wishes. However, there is no suggestion in the proof that any one ever asked for plaintiffs' product and failed to receive it. Hence, in the absence of proof of a single instance of such conduct or of a single suggestion by defendant that that be done, we cannot presume dishonest *conduct*. Rather the facts indicate that it was defendant's desire to distribute its wares and that necessitated enabling the jeweler to carry those wares. That brings us back to plaintiffs' cabinet, a description and discussion of which appears *infra*.

The trial court decided that the development and use by defendant of a numbering system based upon that of the plaintiffs and having a uniform numerical difference for each crystal of exactly two hundred, and the use by defendant of a comparative list setting forth the various numbers contained in the plaintiffs' numbering system and opposite each such number the defendant's number for the same sized crystal, constituted unfair competition. The trial court also decided that the practice of defendant in placing upon

certain of its envelopes containing watch crystals the plaintiffs' numbers for the same sized crystals, thus, " same size as G-S ————" was unfair competition and that this was so even if the trade-mark " G-S " were omitted therefrom, as it was after the commencement of this action. The trial court further decided that the use of the gauge or ruler, the use of glassine or transparent paper for crystal envelopes and the use of a mere color, as " blue," for the paper of an envelope container were not such as to constitute unfair competition.

Taking the matters so referred to in their inverse order: (1) The use of a mere color is not subject to appropriation as a trade-mark in the absence of a finding that it has acquired by use a secondary meaning. The trial court found that plaintiffs had not used the blue paper for crystal envelopes in such a manner or for such a period of exclusive use as to give it any secondary or trade-mark significance. (2) The use of glassine or transparent paper to display the contents of a package was a functional expedient not adapted to indicate the source of manufacture nor subject to exclusive appropriation as a trade-mark in the absence of a finding that it had acquired a secondary meaning. The trial court found that the glassine or transparent paper had not been used in such a manner nor for such a period of exclusive use as to give it any secondary or trade-mark significance. (3) The gauge or ruler having gradations of fortieths of an inch was a mathematical scale and available to any one. The trial court found that it had not been used by the plaintiffs as a trade-mark and that the measurements of diameters of round crystals by such gauge or ruler had not been used by plaintiffs as trade-marks. They, therefore, had no exclusive right to its use. (4) The trial court found that plaintiffs, defendant and other competitors had for many years furnished jewelers and retailers with cabinets containing drawers divided into small compartments, each marked with the maker's size mark for a particular shape and size of crystal. That is correct, but the language necessarily used by way of description makes the

cabinets appear more important and substantial than they are. In the drawers of the cabinets of plaintiffs and defendant there are five rows of cards. The cards are such as are used in card index systems; they are 1-7/8 inches wide and 1-7/8 inches high. The rows are made of pieces of unpainted white wood. The cards are held upright by their insertion in small grooves cut into the wood making the rows. As the cuts in the wood are a little more than one-quarter of an inch apart, that is the width of the compartment as it exists between the two upright cards. It can be made wider by putting the cards into grooves farther apart. The size mark is printed on the card but not on the wood or the drawer. The jeweler makes his own compartment and the card he uses as the rear wall of it has the size mark for that compartment printed on it. If the jeweler took all the cards out of the drawer there would be no compartments and no size marks on the wood making the rows for the cards nor on the drawers.

The trial court also found that plaintiffs had traded-in cabinets and stocks of crystals sold to retailers by the defendant, substituting, among the former customers of the defendant, the plaintiffs' cabinets and crystals designated by the plaintiffs' size marks. The following letter is somewhat illuminative of the existing relationship:

"*February* 20, 1934.

" GERMANOW-SIMON MACHINE CO.,
408 St. Paul St.,
Rochester, N. Y.

Attention Mr. Germanow

" Gentlemen: We acknowledge receipt of your letter which you wrote upon your arrival in Rochester.

" To bring our relations to a satisfactory understanding, we were ready to give you the privilege of replacing our envelopes with a different color of the same. This offer of changing the color of the envelopes, however, is not to be deemed a concession by us that we use the same color envelope as you do.

" However, while you changed your mind about replacing our envelopes, as agreed, after we disclosed the amount of envelopes that we had on hand, we shall be glad to change the color of the ink on the unprinted envelopes as well as the color of the envelope as soon as our supply of them is exhausted.

" We are living up to our promise as agreed and shall expect you to live up to yours by discontinuing the exchanging of our crystals and cabinets for yours.

" Yours very truly,

" STANDARD UNBREAKABLE WATCH CRYSTALS, INC."

We are thus concerned with two competitors in a limited business field. On the one hand are the plaintiffs, the largest manufacturers of unbreakable watch crystals in the world, doing a business of over fifty per cent of the replacement of watch crystals, glass or celluloid, and enjoying such a large proportion of the total volume of business as to tend to have a monopoly of it. Their annual gross sales total about $300,000. On the other hand, we have the defendant as plaintiffs' largest competitor, although doing only a business which, in sales volume, represents less than one-tenth of that of plaintiffs. The plaintiffs charge an excess of fifty per cent over the prices charged by the defendant for corresponding crystals.

In determining what constitutes unfair competition we must attempt to balance the prevention of monopoly with the necessity of maintaining free competition. As hereinbefore stated, neither party sells its product to the consumer. All sales are made to the jeweler or retailer or jobber. The plaintiff Germanow testified that there were about 20,000 of the plaintiffs' cabinets in the possession of jewelers or dealers, of which 10,000 were of the present type cabinet and the others of an older and different or obsolete type. The present type is a twelve-drawer metal cabinet. The older or 1930 type was a small wooden cabinet with two drawers. After the trade-ins of defendant's cabinets and

stocks of crystals and the substitution of plaintiffs' cabinets and crystals with the designation in the cabinets of plaintiffs' size marks, the difficulties for defendant in carrying on its business necessarily increased. It was not found below how many cabinets of defendant were thus traded out, but plaintiff Germanow testified that it was about five hundred, and that, in order to induce a purchase by a jeweler of plaintiffs' new cabinet of crystals, the jeweler was allowed the amount he had paid for the crystals he had on hand, whether " G-S " crystals or defendant's. He claimed not to have traded out any but old cabinets and crystals and that he never agreed to discontinue the practice but defendant's president testified that there were five thousand, constituting eighty per cent, of defendant's cabinets traded out between 1931 and 1933 and that defendant's business dropped to practically nothing following such action.

It is urged that defendant, in seeking to enable jewelers to carry in the cabinets of plaintiffs, crystals of defendant, has been unfair in its competition and that its conduct amounts to improper business practice. We must then ask ourselves this question: May plaintiffs, by selling their cabinets, prevent any other manufacturer from indicating on his crystal envelope containers or elsewhere the corresponding numbers used by the plaintiffs, so that the jeweler or retailer may not place both in the compartments, and thus practically exclude defendant and all other manufacturers from selling to jewelers who have purchased plaintiffs' cabinets? That would be the practical effect of an injunction against defendant, for jewelers are averse to purchasing two cabinets, and if they cannot ascertain readily the compartment in plaintiffs' cabinet into which a given crystal of a competing manufacturer may be placed so as to be had when needed, defendant and all other manufacturers will be unable to sell to those jewelers.

It is obvious that jewelers or retailers will not purchase two cabinets, a realization of which fact undoubtedly caused plaintiffs to trade out defendant's cabinets. This thought was also in the mind of the trial court as is indicated in

its opinion. Assuming, however, that the jeweler or retailer would purchase two cabinets, one of plaintiffs and one of defendant, would it not be equally indefensible under plaintiffs' theory, for defendant to adopt a numbering system for its cabinet compartments to enable the purchaser of the cabinets to select either product at will? I shall treat of plaintiffs' right to preempt a numbering system *infra*.

Among the exhibits is a catalogue of the Federal Watch Crystal Co., Inc., a glass crystal manufacturer, which contains a " Comparative List of Federal with K.K. and B.B. Numbers." (They were two competitors.) It seems from its length to be a complete comparison. Below the heading is the statement: " The purpose of this comparative list, is for your convenience. Our numbers and shapes are the nearest equivalent in size to the other numbers shown and are adaptable *for your cabinet*." (Italics added.)

Another exhibit is headed " Comparative List of K.K. and B.B. Numbers." Following the heading it reads: " The following comparative list made for the convenience of the trade shows the nearest B.B. numbers to correspond with numbers of another brand of crystals." This comparative list was put out by B.B. Crystal Co., Inc.

A further exhibit is a catalogue of V.T.F., glass crystal manufacturer. It has four comparative lists covering thirteen pages. The lists are headed as follows:

1. " If your cabinet is arranged by B.B. numbers, the following table will show the nearest equivalent V.T.F. numbers corresponding to the B.B."

2. " This table will be found useful if your cabinet is arranged by B.B. numbers, and you want to know in which compartment the refills ordered by V.T.F. numbers are to be placed."

3. " If your cabinet is arranged by K.K. numbers, the following table will show the nearest equivalent V.T.F. numbers corresponding to the K.K."

4. " This table will be found useful if your cabinet is arranged by K.K. numbers, and you want to know in which compartment the refills ordered by V.T.F. numbers are to be placed."

There are also two exhibits showing similar comparative lists issued by dealers or importers in the watch movement replacement business.

These are mentioned in view of the uncontradicted testimony of defendant's president that it was the practice in the watch crystal trade for manufacturers and distributors of replacement crystals to supply the jewelers, dealers, jobbers and wholesalers with comparative lists showing the corresponding size numbers of crystals made or sold by other manufacturers or distributors.

Under such circumstances it is clearly apparent that the effect of an injunction here is to create or tend to create a practical monopoly. Consequently, this eventuality, in determining whether to issue an injunction, must be balanced against the right of free competition. Moreover, it must be borne in mind that in the instant case there is no " passing off " so far as the jeweler is concerned. He knows what he is purchasing, the consumer sees neither competitive product, and, as stated before, there is no testimony in the record to indicate that the defendant at any time suggested a " passing off." On the contrary, the defendant placed upon every envelope container its name and trade-mark and the printing thereon is different from that on plaintiffs' containers.

When we consider the argument that defendant's conduct has been competitively unfair and amounts to improper business practice, we must remember that the defendant is to be judged and its conduct examined in the light of the morals of the market place. Plaintiffs and defendant are business competitors in a small field where each is striving for business. The granting of an injunction here would give magic efficacy to the sale of a cabinet. No precedent exists in the recorded decisions on unfair competition where under similar facts an injunction has been granted. Such a step would extend the doctrine of unfair competition much too far.

It is conceded there is no question here involving violation of trade-mark rights. The cabinets are sold without any

restriction upon their use. They can be used as the jeweler or retailer wishes. Indeed, it is argued by defendant that their sale otherwise would be violative of section 340 of the General Business Law (Cons. Laws, ch. 20) as being in restraint of competition. In view of the conclusion we have reached, that question need not be passed upon here. Since the jeweler or retailer is free to do as he wills with the cabinet purchased from plaintiffs, it is clear that he could have purchased crystals from plaintiffs' competitors and renumbered the envelope containers so as to use them in the compartments of plaintiffs' cabinets or could have put defendant's numbers upon the cards which form the compartments, and not carried any of plaintiffs' crystals in the cabinet at all. That being so, must we say that *defendant* may not put plaintiffs' numbers as well as its own upon the envelope containers to facilitate the use of its product in the plaintiffs' cabinet purchased by the jeweler and thus enable the jeweler to sell defendant's wares if he so desires? I think not.

(5) Finally we come to the development and use by defendant of a numbering system based upon that of plaintiffs and having a uniform numerical difference for each crystal of exactly two hundred.

The plaintiff Germanow testified that the numbering system for fancy crystals was referred to in plaintiffs' 1933–1934 catalogue as "the new simplified stock filling and numbering system" and that it was so also for the round crystals.

A series of letters or numbers used solely to describe and distinguish the sizes, styles, grades or qualities of articles in commerce, and not source of origin, may not be preempted by the manufacturer under the circumstances disclosed here. They constitute a "system of doing business" and not a property right. (*Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 N. Y. 163, 178; *Dixie Vortex Co.* v. *Lily-Tulip Cup Corp.*, 19 Fed. Supp. 511; 95 Fed. Rep. [2d] 461; *Stransky Products Corp.* v. *Tate Mop & Cordage Co.*, 22 Fed. Supp. 759; affd., 100 Fed. Rep. [2d] 1021; *Stevens Linen Works* v. *Don & Co.*, 121 Fed. Rep. 171;

*Humphreys Homeopathic Medicine Co.* v. *Hilton,* 60 Fed. Rep. 756; *Keller, Inc.,* v. *Chicago Pneumatic Tool Co.,* 298 Fed. Rep. 52; *Dennison Mfg. Co.* v. *Scharf Tag, Label & Box Co.,* 135 Fed. Rep. 625; cert. denied, 201 U. S. 648; *Dennison Mfg. Co.* v. *Denney Tag Co.,* 48 App. D. C. 213; *Vacuum Oil Co.* v. *Climax Refining Co.,* 120 Fed. Rep. 254; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S. 537; *Coats* v. *Merrick Thread Co.,* 149 U. S. 562; *Deering Harvester Co.* v. *Whitman & Barnes Mfg. Co.,* 91 Fed. Rep. 376; *Autoline Oil Co.* v. *Indian Refining Co.,* 3 Fed. Rep. [2d] 457; *Electric Auto-Lite Co.* v. *P. & D. Mfg. Co.,* 78 Fed. Rep. [2d] 700; *Candee, Swan & Co.* v. *Deere & Co.,* 54 Ill. 439, 465; *Gillott* v. *Esterbrook,* 48 N. Y. 374; *Stokes* v. *Landgraff,* 17 Barb. 608; *Kellogg Co.* v. *National Biscuit Co.,* 305 U. S. 111; *Amoskeag Mfg. Co.* v. *Spear & Ripley,* 4 N. Y. Super. Ct. Rep. [2 Sand.] 599; *Amoskeag Mfg. Co.* v. *Trainer,* 101 U. S. 51.)

Here, there is no claim of violation of trade-mark as to the numbering system. Nevertheless, plaintiffs are claiming a perpetual right to the use of size numbers, which is far greater than any right obtainable under the laws relating to trade-marks. It is a claim both exclusive and perpetual in an idea or system of doing business. It is entirely at variance with accepted legal principles.

In *Dixie Vortex Co.* v. *Lily-Tulip Cup Corp.* (19 Fed. Supp. 511, 523), a case very similar to the instant case, the court said:

" Each party sells its own dispensers. Plaintiff has its decoration following the festooned design of its design patent and the defendant's dispenser has likewise its design. How confusion is likely to be caused in the trade by any such practice I cannot understand, nor is there any evidence of such confusion. That a dealer or customer should use a Gem cup in a Dixie dispenser, or *vice versa*, is no evidence of confusion, nor is there evidence that the decoration of the glass dome had anything to do with the transaction. It is probably all a matter of convenience. If a dealer has Gem cups on hand and no Gem dispenser available, I see

no element of unfair competition in his use of a Dixie dispenser. The user of the cup is not in the slightest degree interested in the dispenser from which the cup is delivered.

" That indeed is the plaintiff's great difficulty in this whole matter of unfair competition. Nobody is deceived. Nobody is confused. There is no evidence that there is a palming off of the goods of one for the goods of the other manufacturer, and no evidence that there is any likelihood of a successful attempt to palm off defendant's wares as and for the products of the plaintiff. I think the most that the defendant can be accused of is a flattering appreciation of plaintiff's successful business practice, but, as I have indicated, such appreciation falls short of unfair competition."

*International News Service* v. *Associated Press* (248 U. S. 215) is not determinative here. There both parties were competitors in the gathering and distribution of news and its publication for profit, the value of which depended upon the promptness with which it was transmitted to the public. As soon as the Associated Press gathered news through its extended service, the yearly cost of which approximated $3,500,000, International systematically misappropriated it from bulletin boards and early editions either bodily or in substance, and published and circulated such news to its customers as its own. The court held that while an individual purchaser of a newspaper could spread its contents gratuitously, such news, when acquired by the Associated Press at its own expense for distribution at a profit, became its stock in trade in which it had a property right against a competitor and was entitled to protection against piracy. If that were not so, a material portion of the profit to be made in publishing fresh news would be diverted from the one who earned it to one who had not. The sale of another's goods as one's own was considered to be a greater violation of fair competitive practice than a palming off of one's own goods as those of another. That case is clearly distinguishable from the present one. Here the commodity sold was crystals and not numbers, and in connection with

their sale the defendant had merely adopted a numbering system similar but not identical with the plaintiffs' to facilitate its sales, whereas in *International News Service* v. *Associated Press* (*supra*) it was the product or commodity itself, *i. e.*, news, which was misappropriated and sold by another as its own. In addition the element of fraud and misrepresentation was present.

The judgments should be reversed and the complaint dismissed, with costs in all courts to the defendant-appellant.

LEHMAN, Ch. J., LOUGHRAN and FINCH, JJ., concur; RIPPEY, J., not voting; SEARS and LEWIS, JJ., taking no part.

Judgments reversed, etc.